DECISION
This is an appeal by defendant, Danny R. Draper, from a judgment of the Franklin County Court of Common Pleas, following a jury trial in which defendant was found guilty of attempted murder and felonious assault.
On February 11, 2000, defendant was indicted on one count of attempted murder, in violation of R.C. 2923.02/2903.02, one count of felonious assault, in violation of R.C. 2903.11, one count of possession of cocaine, in violation of R.C. 2925.11, and two counts of having a weapon while under disability, in violation of R.C. 2923.13.
The matter came for trial before a jury beginning on April 17, 2000. Prior to trial, the court denied a motion by defendant to sever his trial from that of his co-defendant, Delbert E. Miller. Also prior to trial, the court severed the count charging defendant with possession of cocaine as well as one of the counts charging him with having a weapon under disability. The remaining count of having a weapon under disability was tried to the bench.
This case arose out of an incident on January 21, 2000, in which Rodney Jackson was shot in the parking lot of the Club Aces nightclub, located on Hudson Street. Evidence presented by the state indicated that Jackson had been a patron in the bar that evening. Also in the bar that evening were defendant and his co-defendant, Miller, along with two other individuals.
The state's evidence included the testimony of four witnesses who were at Club Aces on the night of the incident: John "Tony" Kent, a bouncer at Club Aces; John Marrero, also a bouncer at the nightclub; Marcus Jenkins, a disc jockey; and Victoria Briggs, the manager of Club Aces. The shooting victim, Jackson, also testified on behalf of the state.
The state's witnesses gave the following testimony regarding the events of January 21, 2000. On that evening, a group of four males, including defendant and co-defendant, entered the nightclub and sat together at a table. Briggs, the manager, subsequently received a complaint from a patron that some of these individuals might be smoking marijuana. One of the bouncers, Kent, went over to the table where the men were seated and informed them that a complaint had been made. According to Kent, one of the individuals "got up an attitude" after being told of the complaint. (Tr. at 143.)
Kent subsequently left the table and went to another part of the nightclub. Later, a further complaint was made concerning the smell of marijuana smoke from the area where the men were seated. Following this second complaint, Briggs told Kent that she wanted the men escorted from the bar. Kent testified that, when he approached the group again, the men "really got nasty, talking about I couldn't tell them to do that." (Tr. at 146.) Briggs also went over to the table during this time, and she testified that one of the individuals in the group called her "a bitch and told me to get out of his face." (Tr. at 388.) At one point, Rodney Jackson, a frequent bar patron at Club Aces, came over to Kent and asked him, "what's going on?" (Tr. at 148.) Kent told him that, "everything is going to be fine." (Tr. at 148.)
The men at the table demanded to have their money back, and Briggs told them that she would refund their cover charge. Briggs and the men then walked over to the back door where the cashier was located. Briggs testified that, while they were waiting for the cashier to count their money, the men "were having a discussion about coming back and robbing the place and burning it down." (Tr. at 393.) Kent also related that the men were making comments that, "we'll blow this bar up. We'll kill everybody in here, and we'll take you out." (Tr. at 150.)
After receiving their money, two of the men in the group exited the rear door, leaving defendant and another man still in the bar. Kent then observed the other man pass a gun to defendant. As defendant and this man then began to leave the bar, Kent, who was standing in the doorway, heard the sound of a "pop" as the weapon in defendant's hand discharged. (Tr. at 157.) Kent was not injured by the gunfire, but he believed that the shot was directed at him. Kent testified that defendant stated at the time, "I will get you. You will die." (Tr. at 157.) Marrero, the other bouncer, was also standing near the door at this time. Marrero did not observe any shots fired by defendant near the door, but he testified that after three of the men in the group had exited the door, the remaining man came back toward the door with a weapon. Marrero testified that he pushed the man with the weapon out the door of the bar. At trial, Marrero stated that the defendant "looks like" the individual who had the weapon that night. (Tr. at 291.)
Briggs also testified that she was near the door when the men left the bar. Briggs related that she observed a man standing in the doorway with a gun, and that Marrero "pushed the guy out the door and pulled the door closed and held it there." (Tr. at 394.) As Marrero was closing the door, Briggs heard the sound of a gunshot before the door was shut.
After the group of four men left the nightclub, Kent held the door shut while Briggs went to the office and told her father, the nightclub owner, to lock the door. Briggs then phoned the police from the office. Briggs related that, "John was holding the door closed so that no one else could enter, and when my father locked the door, we heard more gunshots." (Tr. at 400.) According to Briggs, approximately "three to four minutes" elapsed from the time the door closed until the subsequent shots were fired. (Tr. at 402.) Kent testified that he heard three shots after the door had been locked. Kent estimated that "a couple of minutes" passed between the time the first shot was fired by defendant near the nightclub door and when the later shots were fired outside. (Tr. at 164.)
Kent gradually opened the door and observed "a couple of people running in different directions." (Tr. at 161.) Kent observed Rodney Jackson standing outside the door of Club Aces near a vehicle. Jackson then fell to the ground, and Kent realized that Jackson had been shot.
The shooting victim, Jackson, testified that his memory of the shooting was "very vague." (Tr. at 355.) Jackson arrived at Club Aces at approximately 9:00 p.m. on January 21, 2000. Jackson recalled that, "there was an incident where some gentlemen were being asked to leave by security for smoking marijuana." (Tr. at 356.) Jackson later went over to a security worker, "Tony," and asked if he was okay.
At approximately 10:00 p.m., Jackson decided to leave the bar. Jackson called his wife to tell her he was leaving, and then he went into the bathroom. A short time later, Jackson exited the back door of Club Aces. Jackson did not notice anyone in the parking lot as he first went outside; as he walked between two vehicles in the lot, he was struck by gunfire. Jackson related that, he "heard two shots, saw the gunfire, and that's all I can remember." (Tr. at 362.) Jackson did not see who fired the shots, but he estimated that the assailant was approximately ten feet away from him. The shots were fired from the vicinity of the rear of a vehicle.
Neither defendant nor co-defendant called any witnesses at trial. Following deliberations, the jury returned verdicts finding defendant guilty of attempted murder and felonious assault. During a separate bench trial, the trial court found defendant guilty of the charge of having a weapon under disability. Defendant was sentenced by entry filed June 2, 2000.
On appeal, defendant sets forth the following three assignments of error for review:
Assignment of Error One:
 APPELLANT WAS DENIED A FAIR TRIAL DUE TO HIS TRIAL COUNSEL FAILING TO CALL CRUCIAL WITNESS FOR THE DEFENSE.
Assignment of Error Two:
 THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY. THIS DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
Assignment of Error Three:
 THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT. THIS DENIED APPELLANT OF HIS RIGHT TO A FAIR TRIAL.
We will first address defendant's second and third assignments of error. Under these assignments of error, defendant challenges both the weight and sufficiency of the evidence supporting the guilty verdicts for the attempted murder and felonious assault charges.
In State v. Booth (1999), 133 Ohio App.3d 555, 561, this court noted the distinction between sufficiency and weight of the evidence, stating as follows:
 In considering a claim that a conviction is not supported by sufficient evidence, "the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported, 1993 WL 524917, citing State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. However, the test for reviewing the manifest weight of the evidence is slightly different, and "the evidence is not construed most strongly in favor of the state." Conley. Rather, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." Id.
As noted, the jury returned verdicts finding defendant guilty of attempted murder and felonious assault. Pursuant to R.C. 2903.02(A) and 2923.02(A), a person commits attempted murder when he purposely engages in conduct that, if successful, would constitute the purposeful killing of another person. An individual commits felonious assault when he knowingly either causes serious physical harm to another or causes, or attempts to cause, physical harm to another by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(1) and (2).
We will initially consider defendant's challenge to the sufficiency of the evidence. Construing such evidence most strongly in favor of the state, a review of the facts indicates the following. On January 21, 2000, defendant, co-defendant and two other individuals were ordered to leave Club Aces based on complaints of marijuana use at their table. Defendant and his cohorts became upset and made threats toward the manager and the bouncers. As they were walking out the back door of the bar, one of the men passed a handgun to defendant. Defendant, while standing either at or near the back door of the nightclub, fired a shot, apparently directed at one of the bouncers. The bouncers immediately shut the door, and the owner locked the door a short time later. After a lapse of anywhere from "a couple of minutes" (according to the testimony of Kent) to "three to four minutes" (based on Briggs' account), three more shots were heard coming from the outside of the nightclub. Bar employees subsequently went outside and discovered that Jackson had been shot.
Upon review, we conclude that the evidence was insufficient to convince a rational trier of fact, beyond a reasonable doubt, that defendant was guilty of felonious assault or attempted murder of the shooting victim. The state's theory essentially required the jury to infer that, because defendant, who was one of the individuals making threatening remarks toward nightclub personnel, fired a weapon while leaving the nightclub, he must have been the individual who shot the victim in the parking lot approximately two to four minutes later. While the evidence construed most strongly in favor of the state indicated that defendant fired a weapon while exiting the nightclub that evening, the prosecution elicited no testimony that defendant later fired the shots that wounded Jackson in the parking lot. Specifically, no witness could identify who shot the victim in the parking lot, and nobody identified any individuals fleeing the area after the shooting. Although the evidence indicates that defendant was near the scene minutes prior to the victim being shot, the evidence also indicates that three other men left the nightclub with defendant that evening. It is unknown, however, what transpired between the men in the parking lot during the approximately two to four minutes that elapsed from the time they exited the bar until the victim was shot. It is not even known whether all four men remained in the vicinity of the parking lot during that time. Further, while three shell casings were found in the parking lot, none of the witnesses could identify the caliber of weapon in the possession of defendant inside the nightclub. We note that the weapon used in the assault on Jackson was never recovered, and a gunshot residue test was not conducted on defendant's hands.
We are cognizant that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." State v. Treesh (2001),90 Ohio St.3d 460, 485, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. The requisite standard of review at issue, however, is whether the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. Here, even assuming that defendant had the opportunity to have committed the assault on the victim, the evidence presented by the state merely raises the suspicion that defendant fired the shots that wounded the victim. Such evidence, however, was insufficient for the jury to find, beyond a reasonable doubt, that defendant assaulted the victim. Accordingly, we sustain defendant's third assignment of error.
In light of our disposition of defendant's third assignment of error, finding insufficient evidence to sustain the convictions, defendant's second assignment of error, challenging the convictions based on the manifest weight of the evidence, is rendered moot. Also rendered moot is defendant's first assignment of error.
Based upon the foregoing, defendant's third assignment of error is sustained, the first and second assignments of error are rendered moot, and the judgment of the trial court is reversed and remanded for further proceedings in accordance with law and consistent with this decision.
 ____________ DESHLER, J.
BRYANT, P.J., and BOWMAN, J., concur.